```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
JANE DOE,                                                         :
                                                                  :
                                         Plaintiff,               :    1:25-cv-2878-GHW
                                                                  :
                      -v-                                         :    MEMORANDUM OPINION &
                                                                  :            ORDER
DNA DIAGNOSTICS CENTER LLC, et al.,                               :
                                                                  :
                                         Defendants.              :
                                                                  :
----------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/18/2025

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Plaintiff Jane Doe alleges that she received a DNA paternity test indicating with 99.99% certainty that man "A"—not her then-fiancé—was the father of her baby. Based on this information, Plaintiff terminated the pregnancy. Four months later, Defendants DNA Diagnostics Center, LLC and Winn Health Labs, LLC contacted Plaintiff to report that an "I.T. error" had resulted in her receiving inaccurate test results. In reality, man "A" had a 0.00% chance of being the father. Plaintiff commenced this action against Defendants, claiming negligence and negligent infliction of emotional distress. Plaintiff has requested to litigate this case under a pseudonym, "Jane Doe." Because Plaintiff has overcome the presumption that parties must litigate in their own names, Plaintiff may proceed pseudonymously.

## II. BACKGROUND

### A. Plaintiff's Allegations[1]

"[P]rior to August 2024," Plaintiff and her then-fiancé had "been trying to get pregnant for several months." Compl. ¶ 11. "Due in part to their inability to conceive, . . . they separated for a

---

[1] Plaintiff's verified complaint can be found at Dkt. No. 1-1 at 13–21 ("Compl.").

period of time," during which Plaintiff had a sexual encounter with man "A." *Id.* ¶¶ 12–13. Subsequently, Plaintiff and her former fiancé got back together and again tried to have a child. *Id.* ¶ 14. Then, on August 11, 2024, Plaintiff "learned that she was pregnant." Compl. ¶ 15.

After learning she was pregnant, Plaintiff "took steps to confirm the father of her baby," beginning with an "at-home DNA test" with man "A" that "came back inconclusive." *Id.* ¶ 16. On or about October 19, 2024, Plaintiff contacted Defendant DNA Diagnostics Center, LLC and "ordered . . . the in-person, Non-Invasive Prenatal Paternity testing." *Id.* ¶¶ 18–19. Plaintiff was tested at Defendant Winn Health Labs, LLC's facility during the week of October 21, 2024. *Id.* ¶ 21.

On or about October 31, 2024, Plaintiff viewed her test results, which showed "with 99.99% certainty" that man "A"—not her fiancé—was the father of her child. *Id.* ¶¶ 25–26. By that time, Plaintiff was far enough along in her pregnancy that "[t]ime was running out for any available family planning tools offered in New York." *Id.* ¶ 28. Approximately one week later, Plaintiff "terminate[d] her pregnancy in an attempt to salvage her relationship with" her fiancé. *Id.* ¶¶ 29–30.

On February 14, 2025, Plaintiff received a call from a representative of DNA Diagnostics Center, LLC who "need[ed] to speak with" Plaintiff and man "A." *Id.* ¶ 32. On February 17, 2025, Plaintiff and man "A" called the representative back, and the representative informed them that "there had been 'an I.T. error' and that there was actually a 0.0% chance" that man "A" was the father of the baby. *Id.* ¶ 33.

### B. Facts Relating to Disclosure of Plaintiff's Identity

Plaintiff commenced this action against Defendants DNA Diagnostics Center, LLC and Winn Health Labs, LLC in the Supreme Court of the State of New York on March 4, 2025. Dkt. No. 1 ¶ 1. On March 5, 2025, Plaintiff filed with the state court a proposed order to show cause why she should not be permitted to proceed under a pseudonym. *Id.* ¶ 3. However, in an initial filing in the state court, Plaintiff revealed her identity. *See* Dkt. No. 25-9. Plaintiff's counsel asserts

2

that he is "working to seal the original filing." Dkt. No. 29 at 2.

Soon after filing the lawsuit, Plaintiff "was contacted by news agencies" regarding her allegations. Dkt. No. 20 ("Pl. Decl.") ¶ 8. Plaintiff responded to these requests by "insist[ing] on remaining anonymous before [she] allowed an interview." *Id.* With the promise of anonymity, Plaintiff agreed speak to the reporters, reasoning that the public might "benefit from knowing that the defendants not only make 'I.T. errors' as they called it, but it may take them [] months to notify individuals of their errors." *Id.*

On April 12, 2025, the *New York Post* published an article about Plaintiff's allegations titled "NYC woman had abortion at 20 weeks after paternity test – only to find out lab was wrong." *See* Dkt. Nos. 25-1, 25-2. That same day, *People* published an article about Plaintiff's allegations titled "N.Y.C. Woman Allegedly Discovers a Paternity Test Was Incorrect After Getting an Abortion. Now, She's Taking Legal Action." *See* Dkt. Nos. 25-3, 25-4. Both Plaintiff and DNA Diagnostics Center, LLC were quoted in the articles; Defendant Winn Health Labs, LLC did not respond to reporters' request for comment. Dkt. No. 25-2 at 9–10.

The *New York Post* has approximately 1.4 million followers on Instagram, while *People Magazine* has approximately 14.1 million followers. Dkt. No. 25 ¶¶ 6, 7. The articles garnered significant public engagement—for example, the *New York Post*'s article received 955 comments. Dkt. No. 30 ¶ 4. Many of these comments were derogatory towards Plaintiff, including several that labeled her a "baby killer" and asserted that she will "burn[] in the pits of hell for [having an abortion]." Dkt. No. 29-2 at 154, 240, 288, 310. Although the stories did not disclose Plaintiff's identity, several commenters attempted to reveal Plaintiff's identity by posting a name, an Instagram handle, and the index number for her initial New York Supreme Court case. *Id.* at 136, 137, 300–301; Dkt. No. 27-5 at 3.

Because of "how threatening people have been," Plaintiff wishes to proceed in this litigation

3

under a pseudonym. Pl. Decl. ¶ 11. Plaintiff found the comments "frightening," noting that "some of them amount to threats to [her] for exercising [her] 'right to choose' and the decision [she] made to terminate [her] pregnancy." *Id.* ¶ 9. Due to the "hatred and violence" indicated in online comments, Plaintiff is "scared that someone will find out [her] personal details and possibly take action on their 'right to life' beliefs." *Id.* In particular, she fears that strangers may use her name to "find out where [she] live[s]." *Id.* She is "currently looking for a different apartment because of this." *Id.* Plaintiff is also "currently getting counseling for the events underlying this case." *Id.* ¶ 10. If not allowed to proceed under a pseudonym, Plaintiff contends that the "added stress and anxiety" of revealing her identity "would make it nearly impossible for [her] to continue this action, knowing that some people with very strong opinions may take physical action against [her] and physically hurt [her]." *Id.*

Additionally, Plaintiff expresses that having to disclose her identity publicly exposes her to a risk of "retaliation by others in the community for [her] choice as [she is] an active member of a church and [has] family and friends in [her] community who are actively against such a choice." *Id.* ¶ 4. She does not want her community to find out that she had an abortion, as "this matter is highly personal and sensitive, and [she has] already experienced significant sadness, shock, fear, shame, and embarrassment due to the mental and emotional impact of the false information and pregnancy termination." *Id.* Plaintiff has mostly kept her lawsuit private from members of her community, but possibly disclosed the alleged events to "her former fiancé as well as a cousin." Dkt. No. 25 ¶ 12. She agrees to "share [her] identity with the defendants," as long as her name is not "in any public filings or in the public at all." Pl. Decl. ¶ 11.

### C.  Procedural History

Plaintiff commenced this action in the Supreme Court of the State of New York, County of Bronx, on March 4, 2025. Dkt. No. 1 ¶ 1. Plaintiff requested that she be permitted to proceed

4

under a pseudonym. *Id.* ¶ 3. The Honorable Erik L. Gray of the Supreme Court of New York issued an order prohibiting Defendants from releasing Plaintiff's name pending the hearing of Plaintiff's application. *Id.* ¶ 6. The case was removed to this Court from the Supreme Court of the State of New York, County of Bronx, on April 7, 2025. Dkt. No. 1.

Because Federal Rule of Civil Procedure 10(a) requires that "all the parties" be named in the title of the complaint, the Court ordered on April 9, 2025 that Plaintiff show cause why she should be permitted to proceed pseudonymously. Dkt. No. 9. On April 22, 2025, Plaintiff filed a Response to Order to Show Cause ("Pl. Resp."). Dkt Nos. 17–18. Defendant DNA Diagnostics Center, LLC filed an opposition to Plaintiff's application to be permitted to proceed under a pseudonym. Dkt. No. 24 ("Defs. Opp."). Plaintiff submitted a reply on May 9, 2025. Dkt. No. 29.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) requires that "all the parties" be named in the title of the complaint. "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 188-89 (2d Cir. 2008). "[P]seudonyms are the exception and not the rule," and a party seeking to "receive the protections of anonymity . . . must make a case rebutting" the "presumption of disclosure." *United States v. Pilcher*, 950 F. 3d 39, 45 (2d Cir. 2020) (per curiam).

"When determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff*, 537 F.3d at 189. This is a "factor-driven balancing inquiry [that] requires a district court to exercise its discretion in the course of weighing competing interests." *Id.* at 190.

The Second Circuit has adopted a non-exhaustive list of ten factors to guide courts in balancing "the plaintiff's interest in anonymity . . . against both the public interest in disclosure and any prejudice to the defendant." *Id.* at 189. Courts should consider:

(1) "whether the litigation involves matters that are highly sensitive and of a personal nature;"

(2) "whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;"

(3) "whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;"

(4) "whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;"

(5) "whether the suit is challenging the actions of the government or that of private parties;"

(6) "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;"

(7) "whether the plaintiff's identity has thus far been kept confidential;"

(8) "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;"

(9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities;" and

(10) "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 189-90 (internal quotations, alterations, and citations omitted). Courts are "not required to . . . use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 191 n.4.

**IV.    DISCUSSION**

Considering these factors, the Court finds that, on balance and on the current record,

Plaintiff's stated interest in anonymity outweighs the public interest in disclosure.

### A. This Matter Is of a Highly Sensitive and Personal Nature

The first *Sealed Plaintiff* factor, which asks courts to discern "whether the litigation involves matters that are highly sensitive and of a personal nature," weighs in favor of allowing Plaintiff to proceed under a pseudonym. Cases "relating to birth control, abortion, homosexuality, welfare rights of illegitimate children, and abandoned families are highly sensitive and of a personal nature." *North Jersey Media Group, Inc. v. Doe Nos. 1-5*, No. 12-6152, 2012 WL 5899331 (S.D.N.Y. Nov. 26, 2012). Abortion is not just a qualifying exception to the presumption of public access—it is the "paradigmatic example of the type of highly sensitive and personal matter that warrants a grant of anonymity." *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003); *see also, e.g.*, *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001) *cert. denied*, 534 U.S. 1129 (2002); *Rankin v. New York Pub. Library*, 1999 WL 1084224, at *1 (S.D.N.Y. December 2, 1999).

Here, Plaintiff seeks to conceal her identity in part because the record indicates she had an abortion after receiving results from a paternity test. There are "[f]ew decisions . . . more personal and intimate, more properly private, or more basic to individual dignity and autonomy, than a woman's decision . . . whether to end her pregnancy." *Thornburgh v. American Coll. of Obst. and Gyn.*, 476 U.S. 747, 772 (1986). Indeed, abortion so clearly epitomizes what the law considers "highly sensitive and of a personal nature" that courts often use it as a point of reference in other contexts. *See Michael v. Bloomberg L.P.*, 14-cv-2657, 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015) ("Nor is this the type of unusual case involving matters of a highly sensitive or personal nature—i.e., claims involving sexual orientation, pregnancy, or minor children—in which courts have justified anonymous plaintiffs proceeding pseudonymously."); *Brez v. Fougera Pharms., Inc.*, No. 16-2576 (DDC) (GEB), 2018 WL 2248544, at *1 (D. Kan. Apr. 20, 2018) ("So, this is not a case involving a woman seeking an abortion or a minor."). Accordingly, the Court finds that the first *Sealed Plaintiff*

factor weighs in favor of permitting Plaintiff to proceed under a pseudonym.

### B. Plaintiff Faces a Risk of Harm

The second and third *Sealed Plaintiff* factors, which concern the "risk of retaliatory physical or mental harm" or "other harms" to the plaintiff or third parties, weigh in favor of allowing Plaintiff to proceed under a fictitious name in this case. "The risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Solera Capital LLC*, 18-cv-1769, 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019). While "the potential for embarrassment or public humiliation does not, without more, justify a request for anonymity," *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019) (quoting *Abdel-Razeq v. Alvarez & Marshal, Inc.*, No. 14-cv-5601 (HBP), 2015 WL 7017431, at *3 (S.D.N.Y. Nov. 12, 2015)), a "sworn statement attesting to the likelihood of harmful psychological and emotional consequences" can support a finding of harm, *Doe v. Del Rio*, 241 F.R.D. 154, 161 (S.D.N.Y. 2006) (citing *Doe v. Smith*, 105 F. Supp. 2d 40, 43 (E.D.N.Y. 1999)). Further, a "[p]laintiff's allegation that she has been subjected to death threats [may] provide a legitimate basis for allowing her to proceed anonymously." *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996).

Here, Plaintiff provides clear, specific evidence indicating the likelihood of mental harm if she is forced to identify herself by name. Plaintiff not only attests to having suffered depression, anxiety, and lack of sleep during litigation thus far, but argues that identification would exacerbate those existing harms by exposing her to targeted condemnation from her community. Pl. Decl. ¶ 4. Her concern is evidenced by the nearly 1,000 comments online responding to Plaintiff's anonymous statements, which include accusations of being a "baby killer." *See* Dkt. No. 29-2 at 154, 288, 310.

Further, Plaintiff's fears of retaliation from both her religious community and online commenters transcends potential embarrassment. The Eleventh Circuit's decision in *Doe v. Neverson*, 820 F. App'x 984 (11th Cir. 2020), is particularly instructive in distinguishing mere embarrassment

8

from true psychological injury when evaluating requests for pseudonymity. In *Neverson*, as here, the plaintiff attested that coming from a religious community with "cultural beliefs and traditions" about the conduct she alleged—in her case, being the victim of sexual assault from a "strict Muslim household"—caused her to fear "reprisals affiliated with [her] religion." *Id.* at 988. She also reported serious fears of "online harassment and bullying," as she had reason to believe that fans of the accused rapper Sean "Diddy" Combs would "leak [her] telephone number, address, and perhaps even [her] job information." *Id.* at 985. To corroborate this fear, the plaintiff attached an article that had been published about her lawsuit; comments included, "I know someone can pull up Diddys 2017 New Year's Eve photos let's find out who this chick is roomies" and "She lying. Idc who it is. She lying." *Id.* at 985. The Eleventh Circuit found that the district court erred in denying Ms. Doe's request for anonymity on the basis that it represented mere fear of "personal embarrassment," holding that a "district court abuses its discretion in denying a motion to remain anonymous if it fails to actually consider the circumstances of the case and to weigh the relevant factors and instead follows a blanket rule in making its final decision." *Id.* at 986. Given the strikingly similar circumstances present in this case, attributing Plaintiff's fears to speculative risk of embarrassment would likewise discount her circumstances and the abusive conduct she has endured.

Plaintiff has also received threats online. Comments such as "[h]opefully she burns in the pits of hell" and "you'll get yours" support the existence of a credible risk that Plaintiff is threatened by violence or physical harm if she reveals her identity. *See* Dkt. No. 29-2 at 240; *see Doe v. Fashion Inst. of Tech.*, No. 25-cv-950 (JPC), 2025 WL 384562, at *2 (S.D.N.Y. Feb. 4, 2025) (holding that Plaintiff receiving violent threats after her picture was posted on social media suggested disclosing her identity risked creating further harm); *Doe v. Swearingen*, No. 18-24145-civ, 2019 WL 95548, at *5 (S.D. Fla. Jan. 3, 2019) (discussing particularized evidence of violence against the plaintiffs); *see also Doe v. Townes*, No. 19-cv-8034 (ALC) (OTW), 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020)

9

("The second and third factors evaluate the risks that identification would present and the likelihood of those physical and mental harms. If disclosure creates risk of harm from third parties, disclosure is disfavored.").

### C. Plaintiff Has Not Demonstrated Particular Vulnerability and Is Not Challenging Government Actions

The fourth and fifth *Sealed Plaintiff* factors, which ask "whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of [her] age" and "whether the suit is challenging the actions of the government or that of private parties," weigh in favor of the Defendant. Plaintiff is "not a minor, nor was [s]he a minor at the time of the alleged assault," and she has not identified any additional characteristic making her especially vulnerable to disclosure. *Doe v. Combs*, No. 24-cv-08810 (LAK), 2025 WL 268515, at *4 (S.D.N.Y. Jan. 22, 2025). Thus, the fourth *Sealed Plaintiff* factor weighs against allowing Plaintiff to proceed under a pseudonym.

The fifth factor asks whether Plaintiff sues the government or private parties. Plaintiffs have a stronger interest in proceeding under a pseudonym when challenging the government: in such cases, litigants "presumably represent[] a minority interest (and may be subject to stigmatization)," while the government writ large has a "less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant." *EW*, 213 F.R.D. at 111. Here, because Plaintiff is suing a private party, this factor weighs against her request to conceal her identity. Accordingly, the fourth and fifth *Sealed Plaintiff* factors both weigh against allowing Plaintiff to proceed under a pseudonym.

### D. The Prejudice to Defendant Is Minimal

The sixth *Sealed Plaintiff* factor—whether Defendant is prejudiced by allowing Plaintiff to prosecute her claims anonymously, whether the nature of any prejudice differs at any stage of the litigation, and whether any prejudice can be mitigated by the district court—cuts both ways, though ultimately leans in favor of Plaintiff. Allowing Plaintiff to proceed pseudonymously presents an

10

inherent risk of prejudice, as "concealing the name of a party could deprive a litigant and the court of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses," such that "information about only one side may thus come to light." *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006). Particularly in "[h]ighly publicized cases," allowing Plaintiff to proceed anonymously may prevent witnesses with critical testimony from surfacing. *Rapp v. Fowler*, 537 F. Supp. 3d 521, 531 (S.D.N.Y. 2021).

At the same time, however, the facts of this case suggest that the risk of prejudice against Defendant is minimal. Generally, a defendant is "not greatly prejudiced in his ability to conduct discovery" if the defendant "knows Plaintiff's name." *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006) (holding that, since the defendant already knew the plaintiff's identity, "[o]ther than the need to make redactions and take measures to not disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely [by] plaintiff's anonymity in court papers"). Moreover, in cases that do not turn on the credibility of parties in determining the nature of a contested event—for example, in abortion cases where "[t]here is no dispute the procedure happened; the only question [is] related to legal consequences"—a plaintiff's identity is considered "relatively immaterial," such that its withholding presents little prejudice against the defendant. *Doe v. Alexander*, No. 25-cv-2107 (LJL), 2025 WL 1126617, at *4 (S.D.N.Y. Apr. 16, 2025); *see also EW*, 213 F.R.D. at 111 (noting that Plaintiffs have sometimes been permitted to litigate anonymously in cases about legal ramifications of a medical procedure, including abortion).

In this case, Plaintiff attests that her counsel has confidentially disclosed her name to Defendants. As Plaintiff is not restricting any known discoverable information, the record does not suggest a significant risk of prejudice; Defendants' argument about the failure to acquire relevant information is, at this point, speculative.

11

Further, any risk of reputational damage to Defendants is mitigated by "negative publicity already sustained." *Kolko*, 242 F.R.D. at 198. The *Sealed Plaintiff* test regards only "incremental prejudice from this plaintiff's allegations as opposed to the plaintiffs suing in their own name," even if "anonymity increases plaintiff's ability to communicate with the press outside the courthouse." *Id.*; *see also EW*, 213 F.R.D. at 112 ("[A]ny additional prejudice to the defendant[s'] reputation or ability to operate merely by pursuit of this action under a pseudonym appears minimal."). Thus, in weighing the risk of prejudice to Defendants against Plaintiff's established "need for anonymity," the sixth *Sealed Plaintiff* factor ultimately comes out in favor of Plaintiff. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

### E.  Plaintiff Has Taken Adequate Measures to Protect Her Identity

Because Plaintiff has taken adequate steps to preserve her confidentiality, the seventh *Sealed Plaintiff* factor—whether the plaintiff's identity has thus far been kept confidential—leans in favor of allowing her to proceed under a pseudonym. In general, if a plaintiff publicly discloses her identity during litigation, that fact weighs against her request to maintain anonymity because, "figuratively speaking, the cat is already out of the bag." *Corley v. Vance*, 15-cv-1800, 2015 WL 4164377, at *9 (S.D.N.Y. June 22, 2015). However, an outsider's ability to ascertain information about a plaintiff does not by itself negate that she has preserved her confidentiality. *See Doe v. Salina*, No. 23-cv-3529 (JMW), 2024 WL 1259362, at *6 (E.D.N.Y. Mar. 25, 2024) (holding that a plaintiff's name being exposed "on social media" does not necessarily "counsel disclosure" under the seventh *Sealed Plaintiff* factor if "many of the interactions and communications that underly the allegations were . . . private."); *Doe v. Princeton Univ.*, No. 22-cv-5887 (RK) (DEA), 2023 WL 8171644, at *3 (D.N.J. May 26, 2023) (finding that a plaintiff seeking to proceed pseudonymously may have taken adequate "steps to ensure that [her] name . . . remain[s] confidential," even if her "social circle[]" knows her identity).

It is not dispositive that Plaintiff's identity may be "publicly available through other means of inquiry, or even that an astute individual would be able to aggregate public information in this litigation to deduce a reasonable or potentially accurate guess." *June Med. Servs., LLC v. Phillips*, No. 14-cv-525 (JWD) (RLB), 2021 WL 292441, at *7 (M.D. La. Jan. 28, 2021). Such possibilities do not "necessitate a finding that [her] identit[y] should be judicially unveiled in light of valid, recognized concerns for [her] safety." *Id.*; *see also Doe v. City of New York*, 201 F.R.D. 100, 101 (S.D.N.Y. 2001) (noting that in the "information age . . . the privacy that litigants once enjoyed as a practical matter has been diminished greatly already and will be eroded still further in the near future"); *Rapp v. Fowler*, No. 20-cv-9586 (LAK), 2021 WL 5910288, at *3 (S.D.N.Y. Dec. 13, 2021) (holding that "complete and permanent success" of confidentiality efforts "cannot be guaranteed, especially in the information age in which we now live"). This distinction is increasingly imperative as online search engines have "drastically increased the availability and transferability of compromising information," including (and perhaps especially) on social media platforms. *Senior Executives Ass'n v. United States*, 891 F. Supp. 2d 745, 752 (D. Md. 2012). The possibility of uncontrolled "gathering and almost instantaneous transmission of vast amounts of information" about plaintiffs, regardless of any confidentiality measures taken, underscores the importance of granting pseudonymity protection when appropriate. *Id.* at 751.

Despite Plaintiff's name being revealed in one public filing, she has taken proactive steps to keep her information confidential. She has spoken to the press only under conditions of anonymity. Pl. Decl. ¶ 8. Moreover, as Defendant notes, news stories about Plaintiff obscured her face and body, further indicating efforts to conceal her identity. Def. Opp. at 2. Thus, the record does not indicate that she "publicly disclose[d] her name to attract press attention." *Id.* at 3.

Some courts have suggested that "if the identity of a plaintiff was previously disclosed in judicial or administrative proceedings, then the request to proceed anonymously should be denied"

automatically.  *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 407; *see also, e.g., Doe v. St. Lawrence Univ.*, No. 8:23-cv-426 (BKS) (DJS), 2024 WL 3339859, at *3 (N.D.N.Y. July 9, 2024); *Doe v. Telemundo Network Grp. LLC*, No. 22-cv-7665 (JPC), 2023 WL 6259390, at *6 (S.D.N.Y. Sept. 26, 2023). However, in supporting this claim, courts ultimately cite back to a single case denying Plaintiff's request for pseudonymity "[s]pecifically because Plaintiff publicly identified herself in a myriad of State and federal court documents relating to this matter, which have not been filed under seal and are currently accessible to the public," including an Amended Complaint that revealed her full name under "Jane Doe."  *Doe v. Nat'l Conf. of Bar Examiners*, No. 1:16-cv-264 (PKC), 2017 WL 74715, at *3 (E.D.N.Y. Jan. 6, 2017).

The facts of *Doe v. Nat'l Conf. of Bar Examiners* are sufficiently distinct from this case, where the record indicates that anonymity was compromised only once in error, and where Plaintiff's counsel is actively in the process of rectifying the mistake.  Whether Plaintiff has taken requisite steps to ensure confidentiality remains a fact-based inquiry, rather than one made dispositive by a single erroneous disclosure.  Given the steps Plaintiff has taken to shield her identity and ongoing efforts to remove the one instance of public identification from the record, the seventh *Sealed Plaintiff* factor favors allowing Plaintiff to proceed under a pseudonym.

### F.  The Public Does Not Have an Atypical Interest in Knowing Plaintiff's Identity

The eighth and ninth *Sealed Plaintiff* factors—whether disclosing Plaintiff's name would enhance the public's understanding of the proceedings and the nature of the dispute, or whether there is an atypically weak public interest in knowing the litigants' identities—bear little weight in determining whether Plaintiff in this case should be able to proceed pseudonymously.  In every case, denying the use of a pseudonym risks chilling other individuals from bringing similar suits, knowing they would not be eligible for this protection.  Conversely, allowing use of a pseudonym necessarily requires the Court to withhold Plaintiff's identity from the public, raising the risk that this

14

information is or will become relevant in ways the Court has not foreseen. Beyond these inherent risks, however, the facts of this case do not indicate that the public has any atypical interest in knowing Plaintiff's identity. Accordingly, the eighth and ninth *Sealed Plaintiff* factors are not meaningfully instructive in determining whether Plaintiff in this case should be allowed to proceed under a pseudonym.

### G. Defendant Has Provided No Adequate Alternative Mechanism to Address Plaintiff's Concerns

Finally, the tenth *Sealed Plaintiff* factor—whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff—ultimately leans in favor of allowing Plaintiff to proceed pseudonymously. Given the circumstances, there is no clear alternative that addresses Plaintiff's concerns without allowing her to proceed under a pseudonym. Defendant has failed to provide such an alternative. Had Plaintiff failed to show reason to shield her identity, a lack of alternative mechanisms would "add[] little if anything to the calculus." *Doe v. Black Diamond Cap. Mgmt. LLC*, No. 22-cv-3194 (PGG) (BCM), 2023 WL 2648017, at *6 (S.D.N.Y. Mar. 27, 2023). However, because Plaintiff has "otherwise made a colorable case for blanket confidentiality . . . the tenth *Sealed Plaintiff* factor [] add[s] some weight in [her] favor." *Id.* at *6.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's application to proceed pseudonymously is GRANTED.

SO ORDERED.

Dated: June 18, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge